USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/20/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PERRY A. GRUSS,

                      Plaintiff,

-against-

DANIEL B. ZWIRN, D.B. ZWIRN & CO.,
L.P., and D.B. ZWIRN PARTNERS, L.L.C.,

                      Defendants.

**MEMORANDUM**
**OPINION & ORDER**

09 Civ. 6441 (PGG) (MHD)

PAUL G. GARDEPHE, U.S.D.J.:

        This is a defamation, breach of contract, and promissory estoppel action brought by Plaintiff Perry A. Gruss against Defendants D.B. Zwirn & Co., L.P. (the "Company"); D.B. Zwirn Partners, LLC (collectively, the "Zwirn Entities"); and Daniel B. Zwirn. (Dkt. No. 1 (Complaint)) Gruss was formerly Chief Financial Officer of, and a partner in, D.B. Zwirn & Co., L.P. and its predecessor company. (Cmplt. ¶¶ 3, 7, 13) Zwirn is the Chief Executive Officer and managing partner of the Zwirn Entities. (Cmplt. ¶ 8)

        Pending before the Court is an application (Gibson Dunn Mem. (Dkt. No. 62)) by Gibson, Dunn & Crutcher LLP – formerly counsel to Defendant D.B. Zwirn & Co., L.P. – for clarification of this Court's Memorandum Opinion and Order, dated July 10, 2013, which ordered Defendants to produce for this Court's <u>in camera</u> inspection interview notes and summaries pertaining to twenty-one witnesses whose statements Defendants disclosed to the SEC. <u>Gruss v. Zwirn</u>, No. 09 Civ. 6441 (PGG) (MHD), 2013 WL 3481350 (S.D.N.Y. July 10, 2013) (Dkt. No. 52). Gibson Dunn objects to producing interview notes taken by Gibson Dunn lawyers during its representation of D.B. Zwirn & Co., L.P., on grounds of work product

privilege and public policy. For the reasons set forth below, Gibson Dunn will be ordered to produce its interview notes in accordance with the July 10, 2013 order.

## BACKGROUND

### A.   Plaintiff's Claims and Motion to Compel Production of Documents

In 2006, Defendants operated several hedge funds holding billions of dollars in assets. (Cmplt. ¶¶ 1-2) In the summer of 2006, it came to light that investor funds had been used to purchase Zwirn's Gulfstream IV jet and that the Zwirn Entities had collected management fees from investor funds before they were due. (Cmplt. ¶¶ 1-2, 25-29) The Zwirn Entities hired Schulte Roth and Zabel, LLP to conduct an internal investigation regarding these financial irregularities. (Cmplt. ¶ 30) Schulte Roth attorneys interviewed employees of the Zwirn Entities, including Gruss and Zwirn, and drafted summaries of these interviews. Gruss v. Zwirn, 276 F.R.D. 115, 122 (S.D.N.Y. 2011) (Dkt. No. 37). Gruss was ultimately blamed for the financial irregularities and resigned in the fall of 2006. Id.; (Cmplt. ¶¶ 31-33).

Defendants later hired Gibson, Dunn and Crutcher LLP to conduct a second internal investigation regarding the financial irregularities, and to notify the SEC of those irregularities and of the firm's findings. Gruss, 276 F.R.D. at 122-23; (Cmplt. ¶ 39). Gibson Dunn made presentations to the SEC concerning these matters on January 9 and March 20, 2007. See Gruss, 276 F.R.D. at 123. The Commission subsequently commenced its own investigation of the Zwirn Entities. (Cmplt. ¶ 41) Defendants' disclosures to the SEC were entirely voluntary, and were not in response to a subpoena or any sort of investigative demand. (Answer (Dkt. 7) ¶ 29)

After Gibson Dunn completed its investigation, Zwirn disclosed the financial irregularities and the internal investigations to investors in the Zwirn Entities. Gruss, 276 F.R.D.

2

at 123. In these disclosures, Zwirn blamed Gruss for the irregularities and absolved himself of any responsibility. Id.; (Cmplt. ¶¶ 34-56)

In the Complaint, Gruss asserts that Zwirn's statements to investors were false and defamatory. (Cmplt. ¶¶ 65-84) In particular, Gruss asserts that Zwirn misrepresented the results of Schulte Roth's investigation, which "concluded that Harold Kahn, the Chief Operating Officer of the Zwirn Entities, was at a minimum willfully blind to both the use of investor funds for Zwirn's private jet and the early taking of management fees." Gruss, 276 F.R.D. at 123 (emphasis in original) (quoting Oct. 12, 2010 Pltf. Br. 3). The Complaint also includes breach of contract and promissory estoppel claims in which Gruss asserts that he is owed several million dollars under the partnership agreement. (Cmplt. ¶¶ 57-64, 85-96)

Defendants produced a number of documents regarding the Schulte Roth and Gibson Dunn internal investigations during discovery, including Gibson Dunn PowerPoint presentations that the firm used in reporting its findings to the SEC on January 9 and March 20, 2007, and a March 26, 2007 memorandum from the Zwirn Entities – concerning Gibson Dunn's findings – that the Zwirn Entities issued to investors. Gruss, 276 F.R.D. at 123. The Gibson Dunn PowerPoint presentations to the SEC purport to set forth summaries of what twenty-one witnesses told Gibson Dunn and Schulte Roth. (Oct. 12, 2010 Brecher Aff., Exs. F, G)

After receiving the PowerPoint presentations and other documents in discovery, Gruss sought production of attorneys' notes and summaries of all witness interviews conducted by Schulte Roth and Gibson Dunn attorneys during their respective investigations. Gruss, 276 F.R.D. at 123-24. Defendants opposed Plaintiff's discovery requests, claiming that the notes and summaries were protected by the attorney-client privilege and the work-product doctrine. Id. at

124. Plaintiff subsequently moved to compel production of these materials under Federal Rule of Civil Procedure 37. Id.

### B. The July 10, 2013 Decision on Plaintiff's Motion to Compel Production

This Court referred the parties' discovery dispute to Magistrate Judge Dolinger on November 12, 2010. (Dkt. No. 30) On July 14, 2011, Judge Dolinger issued an order denying Plaintiff's motion to compel on the grounds of attorney-client privilege and work product protection. Gruss, 276 F.R.D. 115.

On July 27, 2011, Plaintiff objected to that portion of Judge Dolinger's Order holding that "Defendants did not waive any privileges associated with the Gibson Dunn and Schulte interview notes and summaries when they produced the findings of these firms' investigations – including portions of the substance of the interview notes and summaries in the form of witness statements – to the Securities and Exchange Commission." (July 27, 2011 Pltf. Br. (Dkt. No. 38) 1) Plaintiff sought "factual interview notes reflecting the statements made by the witness[es]," and not the disclosure of the interview notes and summaries that disclose "counsels' opinion or analytical process." (Aug. 26, 2011 Pltf. Reply Br. (Dkt. No. 45) 2 n.1; see also July 27, 2011 Pltf. Br. at 11)

On July 10, 2013, this Court reversed Judge Dolinger's decision, finding that Defendants waived the attorney-client privilege and work product protection as to attorney notes and summaries of interviews when they disclosed portions of those interview notes and summaries to the SEC. Gruss, 2013 WL 3481350, at *13.

After this Court's decision, Defendants identified four categories of documents subject to production in accordance with the Order: "(1) notes taken by Schulte Roth during interviews it conducted; (2) summary memoranda that Schulte Roth prepared; (3) notes taken by

4

Gibson Dunn during interviews it conducted; and (4) summary memoranda that Gibson Dunn prepared." (July 15, 2013 Pltf. Letter (Dkt. No. 53) 1) As to the third category, Defendants asserted that "Defendants' attorneys do not have the Gibson Dunn notes, and never have had access to those notes. Gibson Dunn has consistently asserted that its notes are protected as Gibson Dunn's attorney work product." (Id.) In an August 22, 2013 submission, Gibson Dunn asserts that this Court should "clarify its July 10, 2013 Opinion and find that the handwritten notes taken by [Gibson Dunn] associates . . . during interviews of employees of its former client, Defendant D.B. Zwirn & Co. LP ('DBZ'), do not have to be produced to the Plaintiff Perry Gruss." (Gibson Dunn Mem. at 1)

## DISCUSSION

### I. GIBSON DUNN DOES NOT HAVE A DISTINCT PRIVACY INTEREST IN THE INTERVIEW NOTES

In its August 22, 2013 application, Gibson Dunn asserts that "the interview notes constitute the firm's preliminary, internal work product and are, thus, protected from disclosure by the firm's own distinct privacy interest." (Gibson Dunn Mem. at 1) In support of this argument, Gibson Dunn argues that the interview notes were intended for internal use only:

> [T]hese notes were not intended to record a witness's statements verbatim; they were never reviewed, corrected, amended, redacted, or annotated by partners of the firm – in short, never prepared for the client, in contrast to the interview memoranda, which alone were shared with the client; they were never intended for review outside the firm and were never given to anyone outside the firm; and, they formed the basis for the formal interview memoranda only insofar as they were consistent with the supervising partner's recollection and notes (if there were any).

(Gibson Dunn Mem. at 13 (internal citations omitted))

In arguing that it has a distinct privacy interest in the interview notes, Gibson Dunn relies on Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP, 91 N.Y.2d 30

5

(1997). (Gibson Dunn Mem. at 12-16) In that case, however, the New York Court of Appeals held that clients have a presumptive right of access to their attorney's entire file, subject to the following qualification:

> [N]onaccess would be permissible as to firm documents intended for internal law office review and use. "The need for lawyers to be able to set down their thoughts privately in order to assure effective and appropriate representation warrants keeping such documents secret from the client involved." This might include, for example, documents containing a firm attorney's general or other assessment of the client, or tentative preliminary impressions of the legal or factual issues presented in the representation, recorded primarily for the purpose of giving internal direction to facilitate performance of the legal services entailed in that representation. Such documents presumably are unlikely to be of any significant usefulness to the client or to a successor attorney. Upon remittal, which will be required in the instant case, disputes concerning access to these and other categories of internal law firm papers will be resolved in the first instance . . . through a hearing which might necessitate in camera review.

Id. at 36-38 (internal citations omitted).

In considering whether Sage Realty authorizes Gibson Dunn to withhold its interview notes, it must be acknowledged, at the outset, that the weight of authority holds that issues of work product protection are governed by federal, and not state, law. See Tudo Ins. Co. v. Stay Secure Constr. Corp., 290 F.R.D. 37, 39 (S.D.N.Y. 2013) ("While state law governs the question of attorney-client privilege in a diversity action, federal law governs the applicability of the work product doctrine."); Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 105 (S.D.N.Y. 2007) ("[F]ederal law governs the applicability of the work product doctrine."); Polin v. Wisehart & Koch, No. 00 Civ. 9624 (AGS) (MHD), 2002 WL 1033807, at *1-2 (S.D.N.Y. May 22, 2002) ("Although the claims and defenses in this lawsuit are a matter of state law, the substance and application of the work-product rule are governed by federal law. . . . [D]efendants' invocation of Sage does not save their position. It fails first because the decision embodies a statement of New York law, whereas the issue before us is . . . governed by federal

6

law. . . ."). But see In re Refco Sec. Litig., 759 F. Supp. 2d 342, 346 & n.2 (S.D.N.Y. 2011) (citing Sage in its discussion of work product protection and noting that "New York law applies to this issue" under Fed. R. Evid. 501).

Even if this Court were to conclude that Sage Realty governs here, "the holding in Sage simply does not support" Gibson Dunn's claims. Polin, 2002 WL 1033807, at *2. In Sage Realty, Proskauer – Plaintiff's former counsel – refused to provide its former client with "a large number of items[,] . . . such as internal legal memoranda, drafts of instruments, mark-ups, notes on contracts and transactions and ownership structure charts," as well as "firm correspondence with third parties and conference negotiation notes." Sage Realty, 91 N.Y.2d at 33. The lower courts held that Proskauer was not required to provide these documents to its former client, but the New York Court of Appeals reversed, finding that "petitioners should be entitled to inspect and copy work product materials, for the creation of which they paid during the course of the firm's representation." Id. at 34, 37. Rejecting the Appellate Division's holding that the documents were "Proskauer's 'private property,' which need not be furnished to petitioners absent a showing of particularized need," id. at 34, the Court of Appeals held that it could "discern no principled basis upon which exclusive property rights to an attorney's work product in a client's file spring into being in favor of the attorney at the conclusion of a represented matter." Id. at 36.

Here, Defendant D.B. Zwirn & Co., L.P. undoubtedly paid for the witness interviews conducted, and the notes taken, by Gibson Dunn attorneys. (See Cmplt. ¶ 39) Gibson Dunn conducted these interviews as part of its representation of the Company. Gruss, 276 F.R.D. at 122-23; (Cmplt. ¶ 39) Accordingly, under Sage Realty, the Company has a

presumptive right of access to Gibson Dunn's entire file, including the interview notes taken by Gibson Dunn attorneys.

While Gibson Dunn contends that its handwritten interview notes fall within the "narrow exception[ ]" of Sage Realty for "firm documents intended for internal law office review and use," 91 N.Y.2d at 34, 37, notes made to record what a witness said during an interview are not the type of documents this exception contemplates. Such notes are not "internal" to a law firm and are not "recorded primarily for the purpose of giving internal direction to facilitate performance of the legal services entailed in that representation." Id. at 38; cf. In re Refco Sec. Litig., 759 F. Supp. 2d at 346 (emails reflecting "internal conversations among law firm partners" are not discoverable by client); Lippe v. Bairnco Corp., No. 96 Civ. 7600 (DC), 1998 WL 901741, at *1-2 (S.D.N.Y. Dec. 28, 1998) (associates' legal research notes and memoranda prepared for the benefit of senior lawyers at firm are not discoverable by client). Indeed, in In re John Doe Corp., 675 F.2d 482 (2d Cir. 1982), the Second Circuit rejected an argument that attorney notes recounting a witness's statements during an interview were entitled to work product protection:

> [W]e have examined in camera the notes of the Employee A interview and agree totally . . . that their production will not trench upon any substantial interest protected by the work-product immunity. The notes recite in a paraphrased, abbreviated form, statements by Employee A relating to events surrounding the payment to Lawyer. To the extent that the statements imply the attorney's questions from which inferences might be drawn as to his thinking, those inferences merely disclose the concerns a layman would have as well as a lawyer in these particular circumstances, and in no way reveal anything worthy of the description "legal theory." We hold, therefore, that the notes of the Employee A interview must be produced.

Id. at 493 (internal citation omitted).

Moreover, as other courts in this District have recognized, the Sage Realty "narrow exception" applies only to internal documents of a law firm that are "unlikely to be of

8

significant usefulness to the client." Sage Realty, 91 N.Y.2d at 38; see Polin, 2002 WL 1033807, at *3 ("[F]rom the discussion in Sage, it is evident that what may be withheld turns upon the needs of the client, and that even opinion work product is subject to production on that basis."). Here, the interview notes discussed in the July 10, 2013 order are directly relevant to the issue of whether Defendants accurately reported that witnesses blamed Gruss for the financial irregularities, and thus are integral to the Zwirn parties' defense. (Answer ¶¶ 102-07, 138-217, 241-42)  In sum, Gibson Dunn's argument that the interview notes qualify as internal firm documents within the "narrow exception" of Sage Realty is not persuasive.

Finally, because Defendant D.B. Zwirn & Co., L.P. is entitled to the Gibson Dunn interview notes, see Polin, 2002 WL 1033807, at *1 ("[T]he [work-product] rule may not be invoked by an attorney to withhold from a client or former client work-product created in representing that client."), they must be produced here. The fact that it is the client's adversary – and not the client – who is seeking the attorneys' notes, does not alter the analysis. Under the Federal Rules of Civil Procedure, a party may serve discovery requests for "items in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).  Under this Rule, "'control' of documents does not require legal ownership or physical possession; all that is required is that the party have the right, authority, or practical ability to obtain the documents at issue." Asset Value Fund Ltd. P'ship v. Care Grp., Inc., No. 97 Civ. 1487 (DLC) (JCF), 1997 WL 706320, at *9 (S.D.N.Y. Nov. 12, 1997) (citing Bank of N.Y. v. Meridien BIAO Bank Tanz. Ltd., 171 F.R.D. 135, 146 (S.D.N.Y. 1997)). Accordingly, "courts in this district have held that documents held by outside counsel are in the possession, custody, and control of their clients." Am. Broad. Cos., Inc. v. Aereo, Inc., Nos. 12 Civ. 1540 (AJN), 12 Civ. 1543, 2013 WL 139560, at *1 (S.D.N.Y. Jan. 11, 2013). Because Defendant D.B. Zwirn & Co., L.P. has a right to the

9

interview notes held by its former counsel Gibson Dunn, these interviews notes are deemed to be under its control. Given that Defendants have waived attorney-client and work product protection as to those portions of the interview notes that constitute fact work product – as explained in this Court's July 10, 2013 order – Plaintiffs are entitled to production of those portions of the notes, and Gibson Dunn must produce the notes for in camera review.

## II.   IN CAMERA REVIEW WILL ENSURE THAT OPINION WORK PRODUCT IS NOT PRODUCED

Gibson Dunn also argues that it should not be required to produce the interview notes for in camera review because "the interview notes constitute, in their entirety, core opinion work product." (Gibson Dunn Mem. at 1)

"There are two types of work product, ordinary or fact (herein 'fact') and opinion." In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007). "[F]act work product may encompass factual material including the result of a factual investigation." Id. "In contrast, opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product." Id. (quoting United States v. Adlman, 134 F.3d 1194, 1197 (2d Cir. 1998)).

Under the July 10, 2013 order, Defendants were directed to produce "for this Court's in camera inspection interview notes and summaries pertaining to the twenty-one witnesses whose statements were disclosed to the SEC." Gruss, 2013 WL 3481350, at *13. The purpose of the in camera review is to permit this Court to "determine what portion of these documents constitutes opinion work product, and . . . order production of the rest." Id. In seeking production of interview notes and summaries, Plaintiff did "not seek disclosure of portions of the interview notes and summaries that constitute opinion work product," and so the

10

Court did "not reach the issue of whether Defendants' waiver extends to such material." Id. Accordingly, under the July 10, 2013 order, only those portions of the interview notes that do not constitute opinion work product will ultimately be produced. See id.

Contrary to Gibson Dunn's argument, this Court is not required to accept the declaration of one of its partners that the notes in question constitute – in their entirety – opinion work product. (Gibson Dunn Mem. at 6-7; Walden Decl. (Dkt. No. 63) ¶ 1) In camera review is "a practice both long-standing and routine in cases involving claims of privilege." In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 386 (2d Cir. 2003) (citing cases in which in camera review was used to evaluate attorney-client privilege and work product protection claims). In camera review allows the Court to determine whether an alleged "work product concern is real, or only speculative," and establishes a record for appellate review. See id.

While courts in this District have, on occasion, accepted counsel's representations regarding the contents of allegedly privileged materials, they have typically done so where the representations were unchallenged. See United States v. Arias, 373 F. Supp. 2d 311, 312 (S.D.N.Y. 2005) (relying on attorney's representation that notes he took during meetings between his client and the Government reflected his impressions and beliefs, where the party seeking production "offer[ed] no reason to expect that [the attorney's] notes contain[ed] anything different"); United States v. Jacques Dessange, Inc., No. S2 99 CR 1182 DLC, 2000 WL 310345, at *3 (S.D.N.Y. Mar. 27, 2000) (attorney's notes taken during Government interview of client were opinion work product, given attorney's unchallenged description of the content of those notes). Here, Plaintiff disputes Gibson Dunn's representations regarding the content of its interview notes (Pltf. Mem. (Dkt. No. 64) at 8), and it appears likely that the notes of witness

11

interviews contain some measure of fact work product.  Cf. In re John Doe Corp., 675 F.2d at 493.

In any event, attorney representations regarding the content of allegedly privileged materials do not preclude a court from conducting an in camera review of such materials.  Courts have discretion to determine whether in camera review is appropriate, based in part on the specificity of counsel's representations.  See Jacques Dessange, Inc., 2000 WL 310345, at *4 (finding that in camera inspection of attorney interview notes was "unnecessary" where the attorney's representations described the "nature of the documents . . . with sufficient particularity for the Court to make a reliable judgment about the level of protection which should be given to the[ ] documents").  Here, Gibson Dunn's representation that every word in the interview memos constitutes "core opinion work product" is not credible.  See In re John Doe Corp., 675 F.2d at 493.  Under such circumstances, in camera review is appropriate.[1]

## CONCLUSION

For the reasons stated above, by November 26, 2013, Gibson Dunn will produce for this Court's in camera inspection its interview notes pertaining to the twenty-one witnesses whose statements were disclosed to the SEC.  The Court will determine what portion of these documents constitutes opinion work product, and will order production of the rest.

Dated: New York, New York
       November 19, 2013

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

[1] Gibson Dunn's arguments that no waiver occurred, and that a finding of waiver will chill cooperation with government agents, were previously considered and rejected.  See Gruss, 2013 WL 3481350, at *6-13.

12